UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NATIONSTAR MORTGAGE LLC,

      Plaintiff,

                     1:16-CV-1360
v.                        (GTS/CFH)

CHRISTOPHER DOLAN,

      Defendant.
_____

APPEARANCES:                OF COUNSEL:

GROSS POLOWY LLC            STEVEN ROSENFELD, ESQ.
 Counsel for Plaintiff
1775 Wehrle Drive, Suite 100
Williamsville, NY 14221

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

   Currently before the Court, in this real property foreclosure action filed by Nationstar Mortgage LLC ("Plaintiff") against Christopher Dolan ("Defendant"), is Plaintiff's motion for default judgment pursuant to Fed. R. Civ. P. 55(b)(2), judgment of foreclosure and sale pursuant to N.Y. Real Prop. Acts. L. § 1351, and appointment of a referee pursuant to Fed. R. Civ. P. 53 and N.Y. Real Prop. Acts. L. § 1611. (Dkt. Nos. 17, 18, 29.) For the reasons stated below, Plaintiff's motion is granted in part and denied in part.

**I.  RELEVANT BACKGROUND**

  **A.  Plaintiff's Complaint**

   The Court has already discussed the details of Plaintiff's Complaint in its Decision and Order of July 6, 2018, which granted Plaintiff's motion for default judgment as to liability, but

denied it without prejudice as to damages and allowed Plaintiff thirty days to file additional substantiating documentation. (Dkt. No. 20 [Decision and Order filed July 6, 2018].) Because the current Decision and Order is intended primarily for review of the parties, who are familiar with that previous Decision and Order, the Court will not repeat those details here.

### B. Procedural History

On November 29, 2016, Plaintiff served the Complaint on Defendant. (Dkt. No. 18, Attach. 3, at 1.) As of the date of this Decision and Order, Defendant has filed no Answer to that Complaint. (*See generally* Docket Sheet.) On December 28, 2016, Plaintiff filed a request for entry of default. (Dkt. No. 7.) On January 3, 2017, the Clerk of the Court entered default against Defendant. (Dkt. No. 8.) As of the date of this Decision and Order, Defendant has not appeared or attempted to cure that entry of default. (*See generally* Docket Sheet.) On February 2, 2017, Plaintiff filed a motion for default judgment against Defendant, pursuant to Fed. R. Civ. P. 55(b)(2). (Dkt. Nos. 10, 11.) However, on June 29, 2017, Plaintiff withdraw that motion with the permission of the Court. (Dkt. Nos. 13, 14.) On October 26, 2017, Plaintiff filed a subsequent motion for default judgment against Defendant, pursuant to Fed. R. Civ. P. 55(b)(2). (Dkt. Nos. 17, 18.) As of the date of this Decision and Order, Defendant has filed no response to that motion. (*See generally* Docket Sheet.)

As discussed above, in its Decision and Order of July 6, 2018, the Court granted Plaintiff's motion for default judgment in part and denied it in part. Plaintiff was granted further extensions to submit its supplemental materials on August 7, 2018, October 4, 2018, November 16, 2018, and January 2, 2019. (Dkt. Nos. 22, 24, 26, 28.) On March 4, 2019, Plaintiff filed its supplemental materials. (Dkt. No. 29.)

## II.     RELEVANT LEGAL STANDARD

"Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." *Robertson v. Doe*, 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008). "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'" *Robertson*, 2008 WL 2519894, at *3 (quoting Fed. R. Civ. P. 55[a]). "Second, pursuant to Rule 55(b)(2), the party seeking default judgment is required to present its application for entry of judgment to the court." *Id*. "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment." *Id*. (citing Fed. R. Civ. P. 55[b][2]). "When an action presents more than one claim for relief . . . , the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties . . . if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

When a court considers a motion for the entry of a default judgment, it must "accept[ ] as true all of the factual allegations of the complaint . . . ." *Au Bon Pain Corp. v. Artect, Inc*., 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted). "However, the court cannot construe the damages alleged in the complaint as true." *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds v. Catone Constr. Co., Inc*., 08-CV-1048, 2009 WL 4730700, at *2 (N.D.N.Y. Dec. 4, 2009) (Scullin, J.) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 [2d Cir. 1999] [citations omitted]). "Rather, the court must 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds*, 2009 WL 4730700, at *2 (quoting *Alcantara*, 183 F.3d at 155 [citation omitted]). This inquiry "involves two tasks: [1]

3

determining the proper rule for calculating damages on such a claim, and [2] assessing plaintiff's evidence supporting the damages to be determined under this rule." *Alcantara*, 183 F.3d at 155. Finally, in calculating damages, the court "need not agree that the alleged facts constitute a valid cause of action . . . ." *Au Bon Pain*, 653 F.2d at 65 (citation omitted).

Under N.D.N.Y. L.R. 55.2(a), when requesting an entry of default judgment from the Clerk of the Court, the moving party must submit (a) the Clerk's certificate of entry of default, (b) a statement showing the principal amount due (not to exceed the amount demanded in the Complaint and giving credit for any payments with the dates of payments), (c) a computation of the interest to the day of judgment, (d) a per diem rate of interest, (e) the costs and taxable disbursements claimed, and (f) an affidavit of the moving party or the party's attorney. N.D.N.Y. L.R. 55.2(a). The appended affidavit must show that (a) the party against whom judgment is sought is not an infant or incompetent person, (b) the party against whom judgment is sought is not in military service, (c) the party against whom judgment is sought has defaulted in appearance in the action, (d) service was properly effected under Fed. R. Civ. P. 4, (e) the amount shown in the statement is justly due and owing and no part has been paid except as set forth in the party's other statement, and (f) disbursements sought to be taxed have been made in the action or will necessarily be made or incurred. *Id.*

Under N.D.N.Y. L.R. 55.2(b), when moving for an entry of default judgment from the Court, the moving party must submit (a) the Clerk's certificate of entry of default, (b) a proposed form of default judgment, (c) a copy of the pleading to which no response has been made, and (d) an affidavit of the moving party or its attorney setting forth the facts required by N.D.N.Y. L.R. 55.2(a). N.D.N.Y. L.R. 55.2(b).

## III. ANALYSIS

After carefully considering whether Plaintiff is entitled to recover damages and other requested relief, the Court answers this question in the affirmative as to the mortgage note, costs, and the appointment of a referee for the reasons stated in Plaintiff's memorandum of law and supplemental submission. (Dkt. No. 18 [Rosenfeld Aff.]; Dkt. No. 29 [Rosenfeld Suppl. Aff.].) However, the Court answers this question in the negative as to the full flat fee requested by Plaintiff, finding that such amount is not reasonable.

"'The burden is on the plaintiff to establish entitlement to recovery.'" *United States v. LaBarge*, 15-CV-1330, 2017 WL 758514, at *2 (N.D.N.Y. Feb. 27, 2017) (D'Agostino, J.). In a mortgage foreclosure action, "[t]he note and mortgage, as the governing instruments, should determine any default damages," *Conklin*, 310 F.R.D. at 45. In this case, the note and mortgage provide that, in the event of default, Plaintiff has a right to recover the unpaid principal and accrued interest, costs and expenses incurred from enforcement of the note, and attorneys' fees. (Dkt. No. 18, Attach. 1, at 12; Dkt. No. 18, Attach. 2, at 20-26, 31.)

### A. Unpaid Principal and Interest on the Mortgage and Note

Plaintiff seeks a total of $208,804.26 for unpaid principal, interest, and advancements which includes (a) $193,555.43 in unpaid principal, (b) $12,153.17 in interest from January 1, 2016, to December 19, 2016, at a rate of 6.5%,[1] (c) $2,861.59 in taxes, (d) $42.07 in insurance,

---

[1] Plaintiff does not provide a *per diem* interest rate in its papers. However, such value can be easily calculated with the following formula: daily interest rate = (outstanding principal x interest rate per annum) / 365 days. *See Nationstar Mortgage LLC v. Atanas*, 16-CV-6832, 2018 WL 2932346 (W.D.N.Y. June 4, 2018). Applying the relevant facts to this formula results in a *per diem* interest rate of approximately $34.47. There are 353 days between January 1, 2016, and December 19, 2016; therefore, the total amount of accrued interest for the claimed period according to the Court's calculations is $12,167.47. Because Plaintiff's requested amount is less than this amount, the Court will not disturb the requested amount on this basis.

(e) $75.00 in property preservation costs, and (f) $117.00 in property inspection costs. (Dkt. No. 29 at 2 [Rosenfeld Suppl. Aff.].)

In support of these amounts, Plaintiff has submitted a Statement of Damages and an affidavit from Document Execution Specialist April Simmons (an employee of Plaintiff), in which Ms. Simmons confirms the accuracy of the amount of requested damages based on her review of computerized records relating to the mortgage. (Dkt. No. 18, Attach. 7, at 1-3; Dkt. No. 18, Attach. 8, at 1.) In compliance with the Decision and Order of July 6, 2018, Plaintiff has also submitted supplemental documentation in the form of those computerized records. (Dkt. No. 29, at 33-57.) The Court finds that this supplemental documentation supports Plaintiff's request for damages as to the unpaid mortgage principal and the other expenditures claimed. Additionally, as the Court noted in its previous Decision and Order and in note 1 above of this Decision and Order, Plaintiff's requested amount of interest is generally consistent with the Court's own calculations.

Therefore, the Court finds that Plaintiff is entitled to a judgment in the amount of the $208,804.24 that it requests.

**B.    Attorneys' Fees**

Plaintiff seeks a flat rate of $4,950.00 in attorneys' fees for work done on this case. (Dkt. No. 18, Attach. 6.) In his supplemental affidavit, Mr. Rosenfeld urges the Court to reconsider its finding that Plaintiff's attorneys' fees should be denied for failure to provide contemporaneous time records. (Dkt. No. 29, at ¶¶ 9-14 [Rosenfeld Suppl. Aff.].) Mr. Rosenfeld cites to multiple cases in this Circuit in which courts have granted Gross Polowy, LLC, its requested flat fee. (*Id.* at ¶¶ 10-11.) Mr. Rosenfeld also requests that, even if the Court denies the request for the full

flat fee, it should still grant a partial fee for reasonable work done that accounts for the experience of the attorney working on the case. (*Id.* at ¶¶ 12-14.)

Upon closer examination, the Court finds that the rule it relied on in its Decision and Order of July 6, 2018 (i.e., the rule set forth in *New York State Ass'n for Retarded Children, Inc. v. Carey*) is expressly based on, and therefore properly construed as limited to, circumstances in which the attorney's fees were awarded pursuant to federal statute rather than through a state law mechanism such as a contract. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983) ("[T]he difficulties raised by the lack of contemporaneous records in this case convince us of the need to announce for the future that contemporaneous time records are a prerequisite for attorney's fees in this Circuit. . . . *Now that Congress has enacted more than 120 statutes authorizing the award of attorney's fees*, . . . and litigation over attorney's fees has itself become a significant addition to the legal landscape, . . . we think it appropriate to convert our previously expressed preference for contemporaneous time records, . . . into a mandatory requirement, as other Circuits have done . . . . Hereafter, any attorney–whether a private practitioner or an employee of a nonprofit law office–who applies for court-ordered compensation in this Circuit for work done after the date of this opinion must document the application with contemporaneous time records. These records should specify, for each attorney, the date, the hours expended, and the nature of the work done.") (emphasis added).

This construction appears supported by the Second Circuit's own subsequent application of the rule. *See F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir. 1987) (citing but not following *New York State Ass'n for Retarded Children, Inc. v. Carey* in

7

diversity action for breach of contract in which attorney's fees were sought citing, indicating the rule in *Carey* applied in "*statutory* attorneys' fee cases") (emphasis added); *Riordan v. Nationwide Mutual Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992) ("State law creates the substantive right to attorney's fees, . . . a right which cannot be deprived by applying the contemporaneous time records rule adopted in this Circuit [in *Carey*] . . . ."); *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) (stating that, "after *Carey*, applications for attorney's fees allowed by *federal* law 'must' be accompanied by contemporaneous time records") (emphasis added). This construction is also shared by at least some other district courts. *See, e.g., Banca Della Svizzera Italian v. Cohen*, 756 F. Supp. 805, 808-09 (S.D.N.Y. 1991) ("As the instant case is based on diversity, and the award sought is based on contract and not pursuant to federal statute, the requirements set forth in *New York State Ass'n for Retarded Children* are not relevant here."); *accord, Morse/Diesel, Inc. v. Trinity Indus., Inc.,* 875 F. Supp. 165, 179-80 (S.D.N.Y. 1994); *Crotona 1967 Corp. v. Vidu Bros. Corp.*, 925 F. Supp.2d 298, 315 (E.D.N.Y. 2013). Therefore, because the entitlement to attorneys' fees is found within the mortgage itself rather than in a federal statute, Plaintiff's failure to provide contemporaneous time records does not wholesale preclude its ability to recover attorneys' fees.

That being said, the Court still does not find that Plaintiff is entitled to the full $4,500.00 flat fee requested because the evidence that has been provided suggests that such amount is not reasonable.[2] Applying a rate of $90.00 per hour to the paralegal hours expended and a rate of

---

[2] The Court notes in particular that Plaintiff's failure to provide an indication of the hourly rate charged by the paralegals and attorneys who worked on this matter, information that is essential for determining whether the requested fee is reasonable. In order to give Plaintiff the benefit of the doubt, the Court attempted to calculate the hourly rate based on (a) the amount of the requested flat fee, and (b) the summary of hours provided. (Dkt. No. 29, at 26-28.)

8

$250.00 per hour to the attorney hours expended, the Court finds that $2,686.00 is a reasonable amount of attorneys' fees under the circumstances.

C.      **Costs and Disbursements**

Plaintiff also seeks a total of $815.00 in costs and disbursements, including (a) $400.00 for the civil case filing fee, (b) $275.00 for the cost of searches, (c) $95.00 for serving the summons and Complaint, (d) $35.00 for the Clerk's fees for filing the notice of pendency, and (e) $10.00 for postal costs. (Dkt. No. 18, Attach. 8, at 1-2.) As discussed in the Decision and Order of July 6, 2018, the Court finds that these costs are reasonable and recoverable. *See CIT Bank, N.A., v. Seeram*, 16-CV-2608, 2017 WL 8220204, at *6-7 (E.D.N.Y. Feb. 15, 2017) (citing cases). Plaintiff is therefore entitled to a total of $815.00 in costs and disbursements.

---

Plaintiff's submission shows that 10.4 hours of paralegal time and 7 hours of attorney time were expended on this matter. (*Id.*) It is generally accepted that the reasonable rate for paralegal time in this District is $90 per hour. *See Cruz v. Sal-Mark Restaurant Corp.*, 17-CV-0815, 2019 WL 355334, at *7 (N.D.N.Y. Jan. 28, 2019) (Stewart, M.J.) (noting that this district has recently upheld hourly rates of between $80 and $90 for paralegals); *Premium Sports, Inc. v. Nichols*, 17-CV-0741, 2018 WL 3574870, at *9 (N.D.N.Y. July 25, 2018) (Suddaby, C.J.) (granting paralegal fees at a rate of $90 per hour); *Deferio v. City of Syracuse*, 16-CV-0361, 2018 WL 3069200, at *9 (N.D.N.Y. June 21, 2018) (Kahn, J.) (allowing an hourly rate of $90 for paralegals); *Parish v. Kosinski*, 17-CV-0344, 2018 WL 1475222, at *5 (N.D.N.Y. Feb. 5, 2018) (Peebles, M.J.) (granting paralegal fees at the requested rate of $90 per hour). Therefore, the paralegal portion of the fees requested would be $936.00 ($90.00 x 10.4 hours), meaning the remaining $4,014.00 of the requested flat fees would be attributable to attorney time, resulting in an estimated hourly rate of $573.43 ($4,014.00 / 7 hours). Such a rate is far above the rate found to be reasonable for an attorney who has been practicing approximately 10 years. *See Pope v. Cty. of Albany*, 11-CV-0736, 2015 WL 5510944, at *10 (N.D.N.Y. Sept. 16, 2015) (Kahn. J.) (finding reasonable rates of $350 per hour for an attorney with more than 35 years of experience and $200 for an attorney with five years of experience); *Chem RX Pharmacy Servs., LLC v. Leatherstocking Healthcare, LLC*, 13-CV-0209, 2014 WL 5107021, at *2 (N.D.N.Y. Oct. 10, 2014) (D'Agostino, J.) (approving hourly rates of $220 and $225 for attorneys with between five and seven years of experience). Consequently, the Court could not find that Plaintiff's requested flat rate is reasonable even if it were to overlook the failure to provide sufficient contemporaneous time records.

### D. Appointment of a Referee

Lastly, Plaintiff requests that a referee be appointed for the process of selling the mortgaged property. "Courts in this Circuit have permitted such appointments where the plaintiff 'established a *prima facie* case by presenting a note, a mortgage, and proof of default.'" *CIT Bank v. Dambra*, 14-CV-3951, 2015 WL 7422348, at *7 (E.D.N.Y. Sept. 25, 2015) (citing cases) Report and Recommendation adopted by 2015 WL 7430006 (E.D.N.Y. Nov. 20, 2015). Because Plaintiff has established a *prima facie* case for mortgage foreclosure pursuant to New York law, as discussed in the Decision and Order of July 6, 2018, the Court finds that the appointment of a referee is appropriate in this case.

As part of the supplemental materials, Plaintiff has provided copies of multiple Judgments of Foreclosure and Sale from this Court in which Veronica M. Kosich, Esq. has been appointed as Referee. (Dkt. No. 29, at 60, 71, 84.) Although the Court requested that Plaintiff submit evidence of Ms. Kosich's credentials specifically (which Plaintiff did not do), the Court finds that the evidence submitted is sufficient to grant Ms. Kosich's appointment as Referee in this matter.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for default judgment (Dkt. Nos. 17, 18, 29) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED, ADJUDGED, AND DECREED** that Judgment of Foreclosure and Sale is entered against Defendant in the amount of $208,804.26 with an unpaid principal balance of $193,555.43 as of December 19, 2016, with contractual interest at the rate of 6.5%, which results in a per diem rate of $34.47 until entry of this Order, and the statutory rate thereafter; and it is further

**ORDERED, ADJUDGED, AND DECREED** that, upon said testimony and exhibits, that the amount due Plaintiff on the Note is $208,804.26, together with interest as specified herein, and that the mortgaged property at 5226 STATE ROAD 9G, LIVINGSTON, NY 12526 ("Property") cannot be sold in parcels; and it is further

**ORDERED, ADJUDGED, AND DECREED** that the application is hereby granted without opposition; and it is further

**ORDERED, ADJUDGED, AND DECREED** that the Property shall be sold pursuant to N.Y. Real Prop. Acts. L. § 1351, that a deed be issued in accordance with N.Y. Real Prop. Acts. L. § 1353(1) and that the sale proceeds be distributed in accordance with N.Y. Real Prop. Acts. L. § 1354; and it is further

**ORDERED, ADJUDGED, AND DECREED** that the Property be sold in one parcel at public auction to the highest bidder, as authorized under N.Y. Real Prop. Acts. L. § 231(1), at the Front Steps of the Columbia County Courthouse, 401 Union Street, City of Hudson, by Veronica M. Kosich, Esq., P.O. Box 591, 24 Hamburg Road, Catskill, NY (518) 943-5050, who is hereby appointed Referee to effectuate the sale of the Property; that public notice of the time and place of the sale be made by the Referee in compliance with N.Y. Real Prop. Acts. L. § 231(2)(a) and the practice of this Court, and published in *The Columbia Paper* or in a publication in compliance with N.Y. Real Prop. Acts. L. § 231; and it is further

**ORDERED, ADJUDGED, AND DECREED** that the Property be sold in "as is" condition (defined as the condition the premises are in as of the date of sale and continuing through the date of closing) and that said sale shall be subject to:

(a) Rights of the public and others in and to any part of the Property that lies within the bounds of any street, alley, or highway or within any restrictions or easements of record;

(b) Any state of facts that an accurate, currently dated survey might disclose;

(c) Rights of tenants, occupants, or squatters, if any (it shall be the responsibility of the Purchaser to evict or remove any parties in possession of the Property being foreclosed, and there shall be no pro rata adjustment in favor of the purchaser for any rents that are paid for a period after the date of the foreclosure sale); and

(d) The right of redemption of the United States of America, if any; and it is further

**ORDERED, ADJUDGED, AND DECREED** in accordance with N.Y. Real Prop. Acts. L. § 1353(1) that Plaintiff or any other parties to this action may become the purchaser or purchasers at such sale; and it is further

**ORDERED, ADJUDGED, AND DECREED** that the Referee at the time of the sale may accept a written bid from Plaintiff or Plaintiff's attorneys, just as though Plaintiff were physically present to submit such bid; and it is further

**ORDERED, ADJUDGED, AND DECREED** that, after the sale, the Referee shall deposit, in his or her name as Referee, the initial bid deposit into <u>his or her IOLA or Separate Account</u>, in a bank or trust company authorized to transact business in New York, and that this account be used solely to complete the closing of the sale and payment of the items referenced herein as needed; and it is further

**ORDERED, ADJUDGED, AND DECREED** that, in accordance with N.Y. Real Prop. Acts. L. § 1351(1), upon payment of the purchase price, the Referee execute a deed to the purchaser; and it is further

**ORDERED, ADJUDGED, AND DECREED** that, in accordance with N.Y. Real Prop. Acts. L. § 1354, upon payment of the purchase price, the Referee is directed to make the following payments or allowances from the sale proceeds to Plaintiff:

FIRST: Payment pursuant to N.Y. C.P.L.R. § 8003 by the Referee of five hundred dollars ($500.00) which represents the statutory fees for his or her conducting the sale of the Property;

SECOND: Payment by the Referee for the costs of advertising or posting as listed on bills submitted to and certified by the Referee to be correct;

THIRD: Payment, in accordance with N.Y. Real Prop. Acts. L. § 1354(1) by the Referee to Plaintiff or its attorney for (a) the amount due Plaintiff, (b) costs and disbursements, and (c) an additional allowance, if awarded;

**Amount Due Plaintiff:** $208,804.26 including interest through December 19, 2016, together with interest at the Note rate (6.5%) until the date of entry of this Judgment, and thereafter at the statutory rate until the date of transfer of the Referee's Deed;

**Costs and Disbursements**: $815.00 adjudged to Plaintiff for costs and disbursements in the action, which will be taxed by the County Clerk and inserted herein, with interest at the Judgment rate thereon from the date of entry hereof;

**Attorneys' Fees**: $2,686.00 is hereby awarded to Plaintiff as reasonable legal fees;

FOURTH: Payment in accordance with N.Y. Real Prop. Acts. L. § 1354(2) of all taxes, assessments, and water rates that are liens upon the Property and redeem the Property from any sales for unpaid taxes, assessments, or water rates that have not apparently become absolute with such interest or penalties which may lawfully have accrued thereon to the day of payment; and it is further

**ORDERED, ADJUDGED, AND DECREED** that Plaintiff may, after entry of this Judgment, make all necessary advances for inspections and maintenance of the Property, taxes, insurance premiums, and other advances necessary to preserve the Property, whether or not said advances were made prior to or after entry of judgment, so long as said advances are not included in the amount due Plaintiff awarded herein, and that the Referee be provided with receipts for such expenditures, which amounts together with interest thereon at the Note rate form the date of the expense until the date of entry of this Judgment, then with interest at the Judgment rate until the date of the transfer of the Referee's Deed shall be included in the amount due Plaintiff; and it is further

**ORDERED, ADJUDGED, AND DECREED** that, if Plaintiff is the purchaser at sale, the Referee shall not require Plaintiff to pay either a deposit or the bid amount, but shall execute and deliver to Plaintiff a Deed of the premises sold upon the payment of the statutory fees of $500.00 for conducting the sale of the Property; Plaintiff shall provide the Referee with proof of the amounts paid for taxes, assessments, and water rates upon recording of the Deed; the balance of the bid amount shall be applied to the amounts due to Plaintiff as specified herein and that, if after applying the balance of the bid amount there is a surplus, Plaintiff shall pay it to the Referee, who shall deposit the funds; in accordance with N.Y. Real Prop. Acts. L. § 1354(4), the Referee shall take receipts for the money so paid out by him or her and file the same with his or her report of sale, and deposit the surplus money, if any, with the Treasurer of Columbia County within five (5) days after the same shall be received and ascertainable, to credit of this action, to be withdrawn only upon the order of the Court, signed by a Judge of this Court; that the Referee make a report of such sale under oath showing the disposition of the proceeds of the sale and

accompanied by the vouchers of the persons to whom the payments were made with the Clerk of the County of Columbia within thirty (30) days of completing the sale, and executing the proper conveyance to the purchaser; and it is further

**ORDERED, ADJUDGED, AND DECREED** that transfer tax is not a lien upon the Property or an expense of sale, but rather an expense of recording the Deed; all expenses of recording the Referee's Deed shall be paid by the purchaser and not the Referee from sale proceeds; the purchaser shall be responsible for interest accruing on real property taxes after the date of the foreclosure sale; and it is further

**ORDERED, ADJUDGED, AND DECREED** that the Referee make a report of sale in accordance with N.Y. Real Prop. Acts. L. § 1355(1) showing the disposition of the sale proceeds accompanied by the receipts for payments made and file it with the Clerk of the Court within thirty (30) days of completing the sale; and it is further

**ORDERED, ADJUDGED, AND DECREED** that the purchaser or purchasers at such sale be let into possession on producing the Referee's Deed; and it is further

**ORDERED, ADJUDGED, AND DECREED** that Defendant in this action and all persons claiming under him, after the filing of such Notice of Pendency of this action, be and hereby are barred and foreclosed of all right, claim, lien, title, interest, and equity of redemption in the said Property and each and every part thereof; and it is further

**ORDERED, ADJUDGED, AND DECREED** that the liens of Plaintiff other than the Mortgage or Mortgages that are the subject matter of this action are also foreclosed herein as though Plaintiff was named as a party Defendant, specifically reserving to Plaintiff its right to share in any surplus monies as a result of such position as a lien creditor; and it is further

**ORDERED, ADJUDGED, AND DECREED** that, by accepting this appointment, the Referee certifies that he or she is in compliance with Part 36 of the Rules of the Chief Judge (22 N.Y.C.R.R., Part 36) including, but not limited to, § 36.2(c) ("Disqualification from appointment") and § 36.2(d) ("Limitations on appointments based upon compensation") and, if the Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee shall notify the appointing Judge forthwith; and no fee shall be paid to such appointee until said appointee has filed all necessary OCA forms with the Court; and it is further

**ORDERED, ADJUDGED, AND DECREED** that, pursuant to N.Y. C.P.L.R. § 8003(b), absent application to the Court, further court order, and compliance with Part 36 of the Rules of the Chief Judge, the Referee shall not demand, accept, or receive more than the statutory amount of five hundred dollars ($500.00) otherwise payable to the Referee for the foreclosure sale stage, regardless of adjournment, delay, or stay of sale; and it is further

**ORDERED, ADJUDGED, AND DECREED** that the Referee is prohibited from accepting or retaining any funds for him or herself or paying funds to him or herself without compliance with Part 36 of the Rules of the Chief Administrative Judge.

Date: May 3, 2019
      Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge